1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

S/Y PALIADOR, LLC,

              Plaintiff,

   v.

PLATYPUS MARINE, INC.,

              Defendant.

CASE NO. 3:22-cv-05591-LK

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO COMPEL

16
17
18

     This matter comes before the Court on Plaintiff S/Y Paliador, LLC's motion to compel further discovery responses from Defendant Platypus Marine, Inc. Dkt. No. 20. For the reasons set forth below, the Court grants the motion in part and denies it in part.

19

## I.   BACKGROUND

20
21
22

     Paliador is the owner of the sailing yacht PALIADOR. Dkt. No. 1 at 2. Platypus Marine provides services such as repair and painting of vessels at its facility in Port Angeles, Washington. *Id.*

23
24

     In January 2022, Platypus attempted to lift the PALIADOR from the water so it could perform maintenance on the vessel. *Id.* Platypus did not connect certain lifting straps to the vessel,

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL - 1

1    and the PALIADOR slipped from its sling. *Id.* at 2–3. The PALIADOR's topside paint finish was

2    damaged during this process, and Platypus promised in writing to repair the damage at no charge

3    to Paliador. *Id.* at 3.

4          Paliador alleges that Platypus failed to properly repair the vessel. Specifically, Paliador

5    contends that Platypus misrepresented the proper repair procedure for the type of paint used on the

6    PALIADOR (Awlgrip paint). *Id.* at 3–4. Instead of repainting the vessel, as the paint manufacturer

7    recommends, Platypus allegedly represented to Paliador that polishing and sanding the topside

8    surfaces was the manufacturer-approved method to repair the damage. *Id.* Paliador contends that

9    Platypus misrepresented the proper repair protocol for the paint because polishing and sanding the

10   damaged areas is much faster and less expensive than repainting the vessel. *Id.* at 4. Paliador brings

11   claims against Platypus for negligence, breach of maritime contract, conversion, fraud and

12   misrepresentation, and a violation of the Washington Consumer Protection Act ("CPA"). *Id.* at 6–

13   8.

14         Paliador served the discovery requests at issue in September 2022. Dkt. No. 21 at 1–2.

15   After Platypus served its responses, Paliador's counsel sent a deficiency letter, and the parties met

16   and conferred on January 10, 2023. *Id.* at 2. Among other issues, the parties discussed disputes

17   regarding two other vessels, the S/Y ALTAIR and the F/V ALEUTIAN SUN, but Platypus refused

18   to produce information regarding those vessels. *Id.* at 2–3. Paliador's counsel also avers that

19   Platypus has not provided responsive information regarding cases in this district involving paint

20   application to two additional vessels. *Id.* at 3. Platypus provided amended discovery answers on

21   February 6, 2023, but Paliador still considered the responses to be deficient, in part because they

22   did not address the disputes involving the other vessels. *Id.* This motion ensued.

## II.   DISCUSSION

24         The Court has admiralty jurisdiction over this case pursuant to 28 U.S.C. § 1333 because

this action arises out of allegedly defective repairs to the vessel under a maritime contract. Dkt. No. 1 at 3, 6 (alleging breach of a maritime contract in failing to repair the damage to the vessel after promising in writing to do so); *see also Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 359–60 (1962) (suits for breach of a maritime contract may be brought in admiralty); *Cascade Maritime Res. LLC v. Indus. Power Supply Inc.*, No. 2:20-cv-00059-BAT, 2020 WL 1689729, at *2 (W.D. Wash. Apr. 7, 2020) ("Contracts for repairs to a vessel . . . come under the scope of admiralty jurisdiction." (internal quotation marks omitted) (quoting *La Esperanza de P.R., Inc. v. Pérez y Cía. de P.R.*, 124 F.3d 10, 16 (1st Cir. 1997))).

Paliador requests that the Court compel Platypus to produce the following:

> [A]ll remaining documents responsive to Plaintiff's discovery requests, including (1) all documents related to Platypus' prior painting and Consumer Protection Act disputes, including but not limited to those involving the S/Y ALTAIR, the F/V ALEUTIAN SUN; and the vessels involved in W.D. WA Case Nos 3:16-cv-05320-BHS[1] and 3:08-cv-0289-BHS;[2] (2) all Platypus' internal communications and documents concerning its servicing the Vessel (both while named S/Y PALIADOR and while named S/Y CHIMERA); (3) documents related to the assertions included in Defendant's Answer, i.e., "the captain did not let the haul out crew know that fuel tanks were unbalanced;" and, "Platypus notes the straps were placed in [sic] same location as the picture the captain provided, and diver verified straps were was close to keel as possible; (4) documents related to Platypus' claimed expertise with Awlgrip paint; and, (5) all additional documents related to Platypus' servicing of the vessel, both when named the CHIMERA and when named the PALIADOR.

Dkt. No. 20 at 6 (footnotes added). Those categories of information and documents translate to Interrogatory Numbers 2, 3, 4, 5, 8, 9, 10, and 11 and Request for Production Numbers 1, 2, 3, 7, 11, 12, and 21. Dkt. No. 20 at 8–12.

---

[1] In *Oberto v. Platypus Marine, Inc.*, No. 3:16-cv-05320-BHS (W.D. Wash.), the plaintiffs alleged that Platypus failed to properly sand their vessel before applying Awlgrip paint and failed to follow the paint manufacturer's specifications and procedures. Dkt. No. 1 at 4–5 (asserting that Platypus "failed to take the [vessel's] hull or its superstructure down to sound, well adhered, Awlgrip-compatible coatings or to their original substrates, prior to applying the Awlgrip products thereto.").

[2] In *Montego, LLC v. Platypus Marine, Inc.*, No. 3:08-cv-05289-BHS (W.D. Wash.), the plaintiff alleged that Platypus failed to properly adhere new paint to hull surfaces on a 93-foot wooden vessel. Dkt. No. 1 at 1–2.

1

## A.     The Meet and Confer Requirement

A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* LCR 37(a)(1). Here, the parties met and conferred on January 10, 2023, but were unable to resolve the matter. Dkt. No. 21 at 2–4.

Platypus contends that Paliador's Request for Production Numbers 7, 11, 12, and 21 and Interrogatory Numbers 8–11 were not discussed during the parties' teleconference on January 10, 2023, Dkt. No. 22 at 6; Dkt. No. 23 at 1–2, and Paliador does not dispute that assertion. Nevertheless, the Court considers the motion to compel in its entirety because Platypus addressed these requests for production and interrogatories in its response to this motion, Dkt. No. 22 at 6–9, and it does not appear that any further meet and confer would be productive. However, the parties are reminded that they are required to comply with the Local Civil Rules, and the Court may strike noncompliant motions and/or impose sanctions for future violations.

## B.     Applicable Standards

Each party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In evaluating a disputed discovery request, the Court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Materials need not be admissible in evidence to be discoverable. *Id.* District courts ultimately retain broad discretion to permit or deny discovery, *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002), and this broad discretion encompasses relevancy determinations, *Surfvivor Media, Inc. v. Survivor Prods.*, 406

1   F.3d 625, 635 (9th Cir. 2005).

2   **C.     The Disputed Discovery Requests**

3          The Court considers each of the disputed discovery requests in turn.[3]

4          1.   Request for Production Numbers 2 and 3

5          Requests for Production Numbers 2 and 3 seek production of all documents related to

6   Platypus's work on the PALIADOR at any time, including when the vessel was previously named

7   the CHIMERA. Dkt. No. 21 at 66–67. After the parties' discovery conference, Platypus searched

8   its files and produced additional documents concerning the CHIMERA on February 6, 2023, Dkt.

9   No. 22 at 10, but Paliador still complains about the responses, Dkt. No. 20 at 10–11. Although

10  Platypus contends that it "has provided its complete file regarding the two times the vessel was in

11  the yard," Dkt. No. 22 at 10, its production of text message communications is insufficient because

12  the text messages in the record suggest that the texts immediately preceding and following the

13  produced conversation could be relevant and could indicate whether the production fully

14  encompasses the relevant conversation. *See, e.g.*, Dkt. No. 25 at 8. Platypus's failure to adequately

15  respond to Paliador's corresponding interrogatories about these communications (discussed

16  below) also raises doubts regarding the completeness of Platypus's production. Therefore, the

17  Court GRANTS the motion relating to these requests for production.

18         2.   Interrogatory Number 2

19         Interrogatory Number 2 asks Platypus to identify all of its employees (or other individuals

20  associated with Platypus) who communicated at any time with any of Paliador's representatives

21  with regard to the vessel and to identify the date, manner, and substance of the communication.

22

23

24  ───────────

[3] Request for Production Number 1 seeks production of all documents Platypus identified or relied upon in answering Paliador's interrogatories, Dkt. No. 21 at 66, so the Court does not address that request separately.

Dkt. No. 21 at 61.[4] In its answer to this interrogatory, Platypus provides that the only communications relevant to this dispute occurred between Timothy Forderer, the PALIADOR's captain, and Chris Feffer, Platypus's vice president of business development and sales. *See id.* at 61–62; Dkt. No. 23-1 at 1, 3. Platypus also explains in its answer that Captain Forderer spoke to many of its employees "on a regular basis about various issues," meaning that it is "not possible" to identify all communications Paliador had with Platypus's employees. Dkt. No. 21 at 61. Platypus's answer further states that it has produced all written correspondence between itself and Paliador. *See id.*

Paliador's motion clarifies that it is seeking information about Platypus's communications about "servicing of the Vessel." Dkt. No. 20 at 10–11. The Court agrees that such information is relevant to the haul out, the repair work, and Platypus's knowledge and familiarity with the vessel. *Id.* Platypus's production of its written communications does not obviate its obligation to respond fully to this interrogatory and identify its oral communications, particularly when it conducts most of its communications "face to face" rather than by email. Dkt. No. 23-1 at 3. In addition, Paliador must provide relevant contextual information regarding the text messages it produces, including the date and the identity of the sender and recipient. Accordingly, the Court GRANTS the motion to compel as it relates to Interrogatory Number 2 and compels Platypus to provide the requested information regarding its communications about servicing the Vessel (both as to the PALIADOR and the CHIMERA).

3.   Interrogatory Number 3

Interrogatory Number 3 asks Platypus to identify any communications with anyone other than its own representatives about the paint on the PALIADOR and the proper repair protocol for

---

[4] The discovery requests define the "Vessel" to include the PALIADOR as currently named and as previously named the CHIMERA. *Id.* at 11.

such paint. Dkt. No. 21 at 62. In its answer, Platypus explains that it has produced written communications with third parties regarding its work on the PALIADOR. *Id.* Platypus also indicates that it had a conversation with Marine Group Boat Works and AkzoNobel (the paint manufacturer) regarding the proper procedures to repair the vessel's damaged paint. *Id.* Paliador's motion does not explain why Platypus's answer to this interrogatory is deficient, and the Court DENIES Paliador's motion as it relates to Interrogatory Number 3.

4. Interrogatory Number 4

Interrogatory Number 4 asks Platypus to state the factual basis for its denial of the allegations in the fourth paragraph of Paliador's complaint, and to identify each document that supports, and/or each person with personal knowledge of, certain factual assertions Platypus made in its amended answer. *Id.* Specifically, Interrogatory Number 4 seeks identification of any documents which support Platypus's assertion in its amended answer to the complaint that "[t]he [PALIADOR's] captain did not let haul out crew know that fuel tanks were unbalanced," and "Platypus notes that the straps were placed in same location as the picture the captain provided, and diver verified straps were as close to keel as possible." Dkt. No. 18 at 2.

In its answer to this interrogatory, Platypus identifies the individuals present when it lifted the PALIADOR from the water and contends that the PALIADOR's captain provided certain information to Platypus's project manager via shared drive, but notes that the project manager was suffering from COVID and was not on site the day Platypus lifted the vessel. Dkt. No. 21 at 63. Platypus's answer alleges that the captain failed to provide any information to the crew that lifted the vessel "and instead provided photographs of the vessel being lifted at a different yard." *Id.* Platypus also alleges that the captain provided an incorrect length of the vessel. *Id.*

Paliador's counsel declares that he has reviewed the documentation produced by Platypus in this matter and has not seen any documents which support the factual assertions described above.

*Id.* at 2. In its response to Paliador's motion, Platypus contends that "[t]here is no documentation of what the captain did not tell the haul out crew" and explains that it has produced photographs of the vessel being hauled from the water at the Knight and Carver Yacht Center. Dkt. No. 22 at 10. Furthermore, Feffer declares that "the captain did not mention that the vessel had been hauled at Platypus previously" and provided to the project manager "a picture showing how the vessel was to be hauled at a different facility—the straps were not tied." Dkt. No. 23-1 at 1–2. Because Paliador has not identified why Platypus's answer to this interrogatory is deficient and it appears that Platypus has responded fully, the Court DENIES the motion to compel as it relates to Interrogatory Number 4.

      5.   <u>Interrogatory Numbers 5, 8–10</u>

      Although Paliador's motion lists Platypus's answers to Interrogatory Numbers 5 and 8–10 as deficient, the motion does not explain why. These interrogatories request that Platypus state the factual basis for its denials and assertions corresponding to listed paragraphs of Paliador's complaint. Dkt. No. 21 at 63–65. Because Paliador has provided no information concerning the alleged inadequacy of Platypus's response, the Court DENIES the motion to compel as it relates to Interrogatory Numbers 5 and 8–10.[5]

      6.   <u>Interrogatory Number 11 and Request for Production Numbers 7, 12, and 21</u>

      Interrogatory Number 11 asks Platypus to identify each person employed by or otherwise associated with Platypus who was involved in the application, repair, or touching up of Awlgrip

---

[5] The Court notes that Interrogatory Number 9 asks Platypus to state the factual basis for its denial of the allegations in the ninth paragraph of Paliador's complaint, which alleges that Platypus refused to acknowledge that it followed an improper repair procedure for Awlgrip paint and "falsely represented" that polishing and sanding the damaged paint was in accordance with manufacturer recommendations. Dkt. No. 1 at 4; Dkt. No. 18 at 3; Dkt. No. 21 at 15. But Paliador itself submits with its reply a letter from Platypus Vice President Chris Feffer to Captain Tim Forderer in which Feffer states, "After the polish was completed it was discovered that the hull is actually painted in AwlGrip and that we have compromised the paint by following the incorrect procedures for AwlGrip because Awlcraft procedure was used." Dkt. No. 25 at 6.

paint on any vessel during the last 10 years. *Id.* at 66. In its answer to this interrogatory, Platypus identifies the four individuals involved in repairing the scratches on the PALIADOR, but objects to the remainder of the interrogatory as overly burdensome. *Id.*

Request for Production Number 7 seeks production of all documents that reflect, pertain, or otherwise relate to Platypus's advertising of painting or paint-related services. *Id.* at 68. Platypus objects to the request as overly burdensome and provides that the content of its advertising can be viewed on its website. *Id.* Similarly, Request for Production Number 21 seeks production of all documents that reflect, pertain, or otherwise relate Platypus's application, repair, or touching up of Awlgrip paint on any vessel during the last 10 years. *Id.* at 73. Platypus also objects to this request as overly burdensome and explains that it applies Awlgrip paint on "dozens" of boats each year. *Id.* Platypus states that it has provided its correspondence with the paint manufacturer (AkzoNobel) regarding the PALIADOR's repair. *Id.*

Paliador's motion identifies Request for Production Number 11 as disputed, Dkt. No. 20 at 8, but it appears that Paliador intended to refer to Request for Production Number 12, which seeks all documents regarding Platypus's claimed experience and expertise as a painter or paint repairer. *Id.*; *see* Dkt. No. 21 at 70. In its response to Paliador's motion to compel, Platypus explains that it inadvertently deleted its answer to Request for Production Number 12 during its editing process, and the answer should have read: "Platypus applies Awlgrip brand paint on a regular basis on over a dozen boats a year. The correspondence with AkzoNobel related to the repair of the PALIADOR have been produced. Platypus has never been involved in a situation where it repaired Awlgrip Topcoat believing it was Awlcraft." Dkt. No. 23 at 1–2.

Paliador argues in its motion that the information responsive to these requests is relevant to the public interest element of its CPA claim. Dkt. No. 20 at 9–10. Indeed, to prevail on its CPA claim, Paliador must prove (i) an unfair or deceptive act or practice, (ii) occurring in trade or

commerce, and (iii) affecting the public interest, as well as (iv) an injury to its business or property, and (v) causation. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). "[A] plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood that other plaintiffs have been or will be injured in the same fashion." *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1108 (Wash. 2015).

Platypus contends that its experience with Awlgrip paint is not relevant to the present dispute because the damage in this case resulted from the PALIADOR's captain allegedly misidentifying the PALIADOR's paint as Awlcraft paint instead of Awlgrip paint. Dkt. No. 22 at 6. The PALIADOR's captain, however, maintains that he did not misidentify the paint. *See* Dkt. No. 26 at 3, 13 (identifying the vessel's hull paint as "Awl Grip Mauritius Blue" in a text message to Chris Feffer). Platypus asserts that it paints, and repairs the paint, on approximately 60 boats each year, some with Awlgrip paint. Dkt. No. 23-1 at 2 (explaining that in 2022, for example, Platypus painted 15 boats with Awlgrip paint). According to Platypus, it "has never had a similar issue arise on any vessel it repaired." *Id.* at 3.

Although Platypus contends that its experience with Awlgrip paint is not relevant to this dispute, it ignores Paliador's allegation that Platypus knowingly misrepresented the repair procedures for the PALIADOR's Awlgrip paint because sanding and polishing the damaged paint (the alleged repair procedure for Awlcraft paint) is much less expensive than repainting the vessel (the alleged repair procedure for the PALIADOR's Awlgrip paint). Dkt. No. 1 at 3–4. Platypus's familiarity and experience repairing and applying Awlgrip paint to vessels is relevant to Paliador's CPA claim because it has some tendency to show that Platypus might have engaged in allegedly deceptive behavior. *See* Fed. R. Evid. 401. In this same vein, Platypus's advertising of its painting services could shed relevant light on its painting practices, experience, and representations regarding the same. Although Platypus argues in a conclusory fashion that providing this

1    information is unduly burdensome, it does not explain how identifying its prior use of Awlgrip

2    paint will impose an undue burden, especially in light of the relatively small number of boats it

3    painted with Awlgrip paint in 2022. Dkt. No. 22 at 7; Dkt. No. 23-1 at 2. Nor will it be unduly

4    burdensome to collect advertising information relevant to Platypus's painting services for the past

5    10 years. Given the nature of Paliador's allegations, information regarding Platypus's prior use of

6    Awlgrip paint and advertising of its painting services is relevant and proportional to the needs of

7    this case.

8         In connection with these requests for production, Paliador also seeks information

9    concerning Platypus's work on the F/V ALEUTIAN SUN, the S/Y ALTAIR, and the vessels

10   referenced in *Oberto v. Platypus Marine, Inc.*, No. 3:16-cv-05320-BHS (W.D. Wash.) (the vessel

11   M/Y MAXIMO) and *Montego, LLC v. Platypus Marine, Inc.*, No. 3:08-cv-05289-BHS (W.D.

12   Wash.) (the vessel M/Y MONTEGO). According to Platypus, the paint-related issue with the

13   ALTAIR involved an overspray event where the interior of the vessel was not properly sealed,

14   Dkt. No. 23-1 at 3, and the issues related to the MONTEGO and MAXIMO involved paint not

15   adhering to the vessels' surfaces, *id.* Platypus is unaware of any issues related to the ALEUTIAN

16   SUN. *Id.*

17        With respect to the ALEUTIAN SUN, Paliador's motion provides no detail regarding any

18   paint-related issue. Instead, Paliador alleges only that the ALEUTIAN SUN was previously the

19   subject of a "similar" dispute with Platypus. Dkt. No. 20 at 8. This conclusory allegation is

20   insufficient to demonstrate the relevance of any documents concerning the ALEUTIAN SUN.

21   Similarly, Paliador does not dispute that the issue involving the ALTAIR was related to an

22   overspray event in the interior of the vessel, and Paliador has failed to articulate the relevance of

23   that issue to the present dispute. Therefore, the Court will not compel production of documents

24   regarding the S/Y ALTAIR or the F/V ALEUTIAN SUN.

However, Paliador has demonstrated the relevance of documentation regarding Platypus's work on the MONTEGO and MAXIMO. Although the disputes involving those vessels concerned issues of paint not adhering to the vessels' surfaces, Platypus does not dispute that those actions concerned allegations that it misrepresented the adequacy of its painting work.

Accordingly, the Court GRANTS Paliador's motion to compel as it relates to Interrogatory Number 11, and requires Platypus to identify each person who was involved in the application, repair, or touching up of Awlgrip paint on any vessel during the last 10 years. The Court also GRANTS in part the motion as it relates to Request for Production Numbers 7, 12, and 21, and requires Platypus to produce the requested documents involving its advertising of painting or paint-related services, its experience with Awlgrip paint, and documents and/or communications related to the work it performed on the MONTEGO and MAXIMO.

**D.      Compelling Production of Devices for Inspection**

On March 9, 2023, after Paliador filed its motion, Platypus produced 10 screenshot images of internal text messages between four of its employees. Dkt. No. 25 at 2, 8, 13. In light of this belated disclosure, Paliador asks the Court to order Platypus to make its hard drives and mobile phones available for inspection by a neutral forensic expert at Platypus's expense. Dkt. No. 24 at 1–2; *see also* Dkt. No. 21 at 67 (Request for Production Number 3 seeking all documents that relate to Platypus's communications regarding the vessel or Platypus's work on the vessel). In support of this request, Paliador contends that Platypus's employees "communicate via text message and by mobile telephone" during their day-to-day operations and that it communicated with Platypus via text message. *See* Dkt. No. 26 at 5–6.

It is procedurally improper for Paliador to introduce new requests for relief—specifically, forensic examination and sanctions—for the first time in a reply brief because it deprives the opposing party of the ability to respond. And even if Paliador's request were proper, based on the

limited record before the Court at this time, the Court concludes that "[w]holesale access" to all of Platypus's computers and cellphones "would be grossly disproportionate to the needs of the case." *See Philips N. Am. LLC v. Advanced Imaging Servs.*, No. 21-cv-00876-DAD-AC, 2023 WL 316916, at *2 (E.D. Cal. Jan. 19, 2023) (explaining that basic discovery concepts apply to requests for forensic examinations). Accordingly, the Court DENIES this request. However, Paliador may renew its request if warranted following Platypus's productions in response to this Order.

**E.    Attorney's Fees**

Paliador requests an award of attorney's fees incurred in bringing this motion. Dkt. No. 20 at 12. Under Federal Rule of Civil Procedure 37(a)(5)(A), if the Court grants a motion to compel, the Court must "require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless the movant failed to make a good faith attempt to obtain the discovery without court action, the opposing party's nondisclosure was "substantially justified," or other circumstances make an award "unjust."

Although Platypus does not dispute that it produced some relevant discovery after Paliador filed its motion to compel, a number of the disputed requests in Paliador's motion were not the subject of the parties' earlier meet and confer. *See* Dkt. No. 21 at 51; Dkt. No. 23 at 2. Therefore, Paliador did not make a good faith attempt to obtain that information without Court action. And while the Court now orders Platypus to produce certain information as set forth above, the Court determines that some of Platypus's nondisclosures were substantially justified. Therefore, Paliador's request for attorney's fees is DENIED.

//

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the motion to compel. Dkt. No. 20.

Dated this 30th day of May, 2023.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL - 14